72 Mass. App. Ct. 331 (2008)                    331

Hanover Insurance Company *v.* Cape Cod Custom Home Theater, Inc.

# Hanover Insurance Company *vs.* Cape Cod Custom Home Theater, Inc.

No. 07-P-188.

Barnstable. January 18, 2008. - August 8, 2008.

Present: Perretta, Lenk, & Sikora, JJ.

*Insurance,* Cooperation by insured, Condition precedent.

An insured's wilful, unexcused refusal to comply with an insurer's reasonable request for an examination under oath constituted a material breach of a condition precedent to a business owner's policy that relieved the insurer of its obligation to provide coverage under the policy without the insurer's having to show prejudice to it. [335-338]

Civil action commenced in the Superior Court Department on January 13, 2003.

The case was heard by *Christopher J. Muse*, J.

*Lawrence A. Dugan* for the plaintiff.

*Ross A. Annenberg* for the defendant.

Lenk, J. The defendant insured filed a claim of loss with the plaintiff insurer under a business owner's policy of insurance, the claimed loss arising from a reported break-in at the insured's business premises. Following a prompt investigation giving rise to reasonable suspicion that the break-in may have been an "inside job," the insurer requested that the insured produce certain financial documentation and submit to an examination under oath. The insured failed without explanation to appear at the first scheduled examination, and was nonresponsive in material respects at two rescheduled examinations. The insured refused throughout to produce the requested financial records, finally doing so only after the insurer filed this action in which it sought, among other things, a judgment declaring that the insured's failure to comply with policy obligations requiring its cooperation relieved the insurer of any liability to the insured for the claimed loss.

After a jury-waived trial, the judge concluded that the defendant insured had committed a material breach of its obligations under the policy and in so doing had caused the insurer prejudice. Nonetheless, because the judge determined that such prejudice could be cured by an order requiring the insured to pay the insurer's costs and attorney's fees, he refused the declaratory relief that the insurer requested. The insurer appeals, maintaining that the judge erred in failing to declare that the insured's material breach of conditions precedent precluded the insured from recovery under the policy of insurance. We agree and reverse that aspect of the judgment.

*Background.* The judge's findings of fact are not challenged on appeal and are, in any event, amply supported by the record evidence. The facts pertinent to the issue before us are these.

The insured, Cape Cod Custom Home Theater, Inc., is a corporation formed in early 2000, and since its inception, its sole stockholder and only officer has been Richard Baxter. The business is located in the town of Mashpee on Cape Cod and sells and installs high-end home theater audio and video equipment. At all relevant times, the insured had a business owner's insurance policy with the insurer, Hanover Insurance Company. Section E.3. of the policy required the insured to "[c]ooperate with [the insurer] in the investigation or settlement of [any] claim" made under the policy, to permit the insurer to examine its books and records, and to submit to examinations under oath "about any matter relating to [the] insurance or [a] claim" brought under the policy.

The insured claimed a substantial loss under the policy following a reported July 17, 2002, break-in at its showroom. The insurer promptly investigated and a number of factors came to light that provided the insurer with "a good faith basis to believe that this alleged loss may have had the involvement of Mr. Baxter, and . . . the reasonable suspicion that this was a 'set-up,' and that, therefore, further investigation should take place."[1]

The insurer requested Baxter's participation in an examina-

---

[1]During the course of its investigation, the insurer obtained information that caused it to question whether the loss had occurred as the insured claimed it had, whether the extent and value of the loss was as the insured claimed it to be, and whether the insured had a financial motive to present a fraudulent

tion under oath scheduled for November 1, 2002, and also asked that he bring with him certain documents. Without explanation, Baxter neither appeared for the examination nor produced the documents. The examination was again scheduled and Baxter appeared on November 8, 2002, with his then lawyer, Ricky Weiner. According to the judge's findings, "nothing productive occurred. There was no response to any legitimate questions that were raised by counsel, and . . . the refusal to answer questions was unreasonable. Moreover, the conduct of Attorney Ricky Weiner in that instance was unprofessional in too many regards to list . . . ." At that examination, counsel for the insurer "demonstrated to the opposing counsel the relevance of certain requests for information, particularly, evidence concerning . . . Baxter's assets, financial circumstances, loan history, debt obligations, documents concerning the above, as well as his personal income tax returns."

Baxter and his counsel apparently walked out of the November examination and continued to withhold the requested documents. They were not supplied at or before the resumption of Baxter's examination under oath on December 13, 2002, "when . . . Baxter appeared with counsel[. A]gain, the court notes the abject noncompliance with basic standards of decency as a lawyer involved in litigation of consequence, but, more importantly in terms of this case, notes that under the direction of counsel, . . . Baxter refused to provide the kind of material relevant information that was legitimately sought by [the insurer]."[2]

In view of the foregoing and the seeming futility of further

---

claim. Factors giving rise to the insurer's suspicions included: a lack of corroborative physical evidence of forcible entry with respect to the door said to have been the perpetrators' point of entry; the truck said to have been the getaway truck was owned by the insured and was later recovered showing no signs of having been forcibly taken; Baxter's preparation of and presentation to police shortly after the reported break-in of an itemized list of stolen goods; the insured's failure to maintain and produce reliable and credible physical inventories; information suggesting significant business losses in 2001; an assessment in April, 2002, by the State taxing authority of almost $50,000 for unpaid sales tax; and the fact that increased personal mortgage and business loans had been taken out early in 2002.

Irrespective of whether the facts would ultimately warrant a finding of fraud, see note 4, *infra*, they were enough to provide reasonable suspicion warranting further investigation.

[2]The judge observed during trial, after reviewing transcripts of the examina-

efforts to gather the information it reasonably deemed necessary, the insurer then denied the claim and brought this action on January 13, 2003, seeking declaratory relief.[3] Shortly thereafter, the insured finally produced the financial documentation that the insurer had sought. No further examination of Baxter under oath apparently took place after the documents were made available. After trial, in 2006, the judge concluded that the insured had "violated [the] provisions of the contract for insurance which required him to generally cooperate but also to appear and to give meaningful testimony at an examination under oath and also to produce documents." The judge also ruled that "[w]hile ordinarily this would have allowed [the insurer] to deny coverage, the court finds that the obvious prejudice to [the insurer] by the stubborn and unfounded refusal to timely submit to an examination under oath, and to provide relevant documents, can be remedied by an order to pay costs and [attorney's] fees . . . . The court finds that the [insured] required [the insurer] to obtain the judgment of this court on this issue, such that an assessment of costs through the completion of trial is appropriate and just."[4]

---

tions under oath: "This is one of the most disgraceful displays I've seen at a deposition conducted by an attorney, one of the most disgraceful that I've seen. I get to look at these under ordinary discovery motions relating to compulsion and for sanctions. And this is one of the most unprofessional and disgraceful in terms of the rules that have been modified in the past six or seven years where fortunately, the Bar takes notice that this kind of conduct at deposition is totally, totally prohibited, totally unexpected and intolerable." The record before us supports the judge's characterization.

[3]More precisely, the complaint sought declaratory relief to the effect that it had no liability to the insured under the policy for the claimed loss on alternative grounds: (1) because the insured had committed a breach of policy conditions requiring its cooperation; (2) because the loss and damage alleged resulted from the intentional acts of or on behalf of the insured; or (3) because the insured knowingly concealed and misrepresented material facts in connection with the claim. The insured counterclaimed, inter alia, under G. L. c. 176D, § 3(9), and G. L. c. 93A, § 9(1), but prior to trial the counterclaims were dismissed.

[4]Following trial, the judge found and ruled (1) that while the insured violated policy provisions requiring its cooperation to the insurer's prejudice, the prejudice could be and was ordered cured, and the breaches did not warrant the insurer's denial of coverage; (2) the insurer did not prove that the insured was excluded from coverage because of concealment, misrepresentation, or fraud; and (3) the disputed claim was referred to a designated third party for resolution pursuant to pertinent policy provisions. Judgment subsequently entered accordingly.

72 Mass. App. Ct. 331 (2008)                    335

Hanover Insurance Company v. Cape Cod Custom Home Theater, Inc.

*Discussion.* There can be no serious question here that the insured's conduct constituted a material breach of the insurance contract. The question is whether, in the circumstances, those breaches admit of any remedy short of precluding the insured from recovering under the policy. It is well established that under the cooperation clauses generally included in insurance contracts, insureds have a general obligation to cooperate with their insurer during any investigation of claims made under such policies, *Mello* v. *Hingham Mut. Fire Ins. Co.*, 421 Mass. 333, 340 n.6 (1995) (*Mello*), and that when an insurer's demand for cooperation is reasonable and the insurer has acted in good faith and with due diligence, an insurer may be relieved of liability for claims in certain circumstances where an insured commits a material breach of a cooperation clause. *Imperiali* v. *Pica*, 338 Mass. 494, 499 (1959). Insurers for their part are obliged to communicate promptly with the insured, investigate claims promptly, and confirm or deny coverage of such claims promptly. See G. L. c. 176D, § 3, and G. L. c. 93A, § 9(1).

We noted in *Lorenzo-Martinez* v. *Safety Ins. Co.*, 58 Mass. App. Ct. 359, 364 (2003), that in situations where information material to a claim investigation is "primarily or exclusively within the possession of the insured," the provision requiring submission to an examination under oath is particularly important for obtaining corroboration of a claim and possibly weeding out fraud. "Because of the insurer's heightened need for reliable information from the insured in such cases, we are of the opinion that the obligation to submit to an examination under oath is distinguishable from other obligations of the insured under the insurance contract, in which breach and actual prejudice must be shown." *Ibid.* See *Mello*, 421 Mass. at 336-337. See also *MetLife Auto & Home* v. *Cunningham*, 59 Mass. App. Ct. 583, 589-590 (2003), quoting from *Waste Mgmt., Inc.* v. *International Surplus Lines Ins. Co.*, 144 Ill. 2d 178, 204 (1991). Mandating cooperation by the insured "weed[s] out fraud by providing an insurer with a mechanism for obtaining formal corroboration of a claim," *Lorenzo-Martinez* v. *Safety Ins. Co.*, *supra* at 364; see *Mello*, *supra* at 337, and thereby enables an insurer to discharge its obligations promptly.

Hence, an insurer's request for an examination under oath, if

reasonable under the circumstances, is "strictly construed as a condition precedent to the insurer's liability." *Mello, supra* at 337. *Rymsha* v. *Trust Ins. Co.,* 51 Mass. App. Ct. 414, 417 (2001). See *Cohen* v. *Commercial Cas. Ins. Co.,* 277 Mass. 460, 462 (1931). "A condition precedent defines an event which must occur before . . . an obligation to perform arises under [a] contract." *Twin Fires Inv., LLC* v. *Morgan Stanley Dean Witter & Co.,* 445 Mass. 411, 420 (2005), quoting from *Massachusetts Mun. Wholesale Elec. Co.* v. *Danvers,* 411 Mass. 39, 45 (1991).

Recently, we had occasion to observe that, as a general rule, an insurer may not disclaim coverage by virtue of an insured's breach of its duty to cooperate absent a showing of prejudice. *Boffoli* v. *Premier Ins. Co.,* 71 Mass. App. Ct. 212, 216 (2008). We went on to underscore, however, the significance of the examination under oath. "[B]ecause of the importance of weeding out fraud . . . we have recognized a limited exception to the prejudice requirement in those cases where there was a wilful and unexcused refusal of the insured to comply with an insurer's timely request for an examination under oath." *Ibid.*

The insured here did not simply commit a breach of its duty to cooperate by its persistent and unjustified refusal to turn over relevant documents, doing so only belatedly and when prompted by the lawsuit. We need not decide whether that breach, standing alone, which itself prejudiced the insurer, could be remedied by requiring the insured to recompense the insurer its costs and attorney's fees, for that is not the situation before us. Instead, and in addition, the insured wilfully and without excuse refused to comply with the insurer's timely and reasonable request for an examination under oath. That the insured may also have been heeding the unfortunate advice of counsel in so doing and that he belatedly disclosed financial records when this action was filed are not dispositive of the matter.

An insured's wilful, unexcused refusal to comply with a reasonable request for an examination under oath, as here, constitutes a material breach of a condition precedent to the insurance contract and discharges the insurer's obligations thereunder. The insurer need not show prejudice in such circumstances. *Lorenzo-Martinez* v. *Safety Ins. Co.,* 58 Mass. App. Ct. at 363. *Morales* v. *Pilgrim Ins. Co.,* 58 Mass. App. Ct. 722, 724 (2003).

*Boffoli* v. *Premier Ins. Co.*, 71 Mass. App. Ct. at 216. See 13 Couch, Insurance § 196:24 (3d ed. 2005) (citing *Ellis* v. *Safety Ins. Co.*, 41 Mass. App. Ct. 630 [1996]). See also 1 Business Ins. L. & Prac. Guide § 5.05(2)(c)(i) (2006), citing *Claflin* v. *Commonwealth Ins. Co.*, 110 U.S. 81 (1884) (failure to submit to examination under oath an "absolute defense" to suit on policy).[5] Otherwise put, this insured's intentional obstructionism in connection with the examination under oath thwarted the insurer's legitimate efforts to investigate the claim expeditiously, consistent with its statutory obligation promptly to confirm or deny coverage. Under the applicable limited exception to the general rule, the insurer need show no further prejudice to be relieved of its obligation to provide coverage under the insurance policy.

---

[5]No Massachusetts decisions addressing whether an insured can cure a breach of its obligation to submit to an examination under oath have been brought to our attention. Courts in other jurisdictions addressing the issue rarely permit an insured to do so. See, e.g., *Monticello Ins. Co.* v. *Mooney*, 733 So. 2d 802, 807-808 (Miss. 1999) (belated offer to provide records did not cure wilful breach); *DiFrancisco* v. *Chubb Ins. Co.*, 283 N.J. Super. 601, 613 (App. Div. 1995) ("no legal or equitable basis exists in these circumstances" for allowing wilfully uncooperative insured "another chance"); *Pizzirusso* v. *Allstate Ins. Co.*, 143 A.D.2d 340 (N.Y. 1988) (error to allow thirty-day window to cure prior wilful failure to cooperate where there was refusal to answer questions at examination and no indication plaintiff would cooperate in near future). The insured cites *Romano* v. *Arbella Mut. Ins. Co.*, 429 F. Supp. 2d 202 (D. Mass. 2006), in support of its position, but that case involved the insureds' refusal to provide requested documents, and the court denied the insurer's summary judgment motion on a breach of contract claim because the insurer suffered no prejudice. *Id.* at 208. *Romano* is quite unlike the situation at hand.

Although courts in New York and Michigan have in certain situations given insureds an opportunity to cure noncooperation by tardy submission to an examination under oath, see *Thomson* v. *State Farm Ins. Co.*, 232 Mich. App. 38, 53-54 & n.9 (1998); *Pogo Holding Corp.* v. *New York Property Ins. Underwriting Assn.*, 73 A.D.2d 605 (N.Y. 1979), these cases are inapposite, as they involved insureds whose noncooperation was *unintentional* — arising, e.g., out of a good faith misunderstanding or lack of communication, rather than a wilful or fraudulent frustration of an insurer's reasonable pursuit of material information. Indeed, even in these jurisdictions, upon a showing of *wilful* noncompliance with a reasonable request for an examination under oath, insurers have no obligation to perform under the insurance contract. See, e.g., *Thomson* v. *State Farm Ins. Co.*, 232 Mich. App. at 45-46, 50-55, citing *Yeo* v. *State Farm Ins. Co.*, 219 Mich. App. 254, 259 (1996); *Averbuch* v. *Home Ins. Co.*, 114 A.D.2d 827, 829 (N.Y. 1985) (summary judgment for insurer where pattern of noncooperation by insured and refusal to answer material and relevant questions under oath).

For the aforesaid reasons, we affirm so much of the judgment as declares that the insured committed a violation and material breach of the provisions of the insurance contract that required it generally to cooperate, to appear and give meaningful testimony at an examination under oath, and to produce documents. We reverse so much of the judgment as declares the insurer contractually obliged to provide coverage to the insured.

*Conclusion.* Paragraphs one and two of the judgment are affirmed. The remainder of the judgment is vacated and is to be replaced with a declaration that the insurer is not contractually obligated to provide coverage to the insured.

*So ordered.*