# United States Court of Appeals
## For the First Circuit

---

No. 21-1603

MOTORISTS COMMERCIAL MUTUAL INSURANCE COMPANY,

Plaintiff, Appellee,

v.

ROGER HARTWELL; LYNNWAY AUTO AUCTION, INC.,

Defendants, Appellants,

SAFETY INSURANCE COMPANY; RUBEN D. ESPAILLAT, as Personal Representative of the Estate of Ruben Dario Espaillat; TAMMY L. BERIO, as Personal Representative of the Estate of Elliott Rowlands, Jr.; GIOVANNI SANTIAGO; KENNETH VINCENT; MAUREEN VINCENT; STEVEN SARKIS; SANDRA ORTIZ, as Personal Representative of the Estate of Leezandra Aponte; BRESMIL ROBLES; FANNY RAMIREZ; MARK LEE; SHIRLEY MEZA LOPEZ, as Personal Representative of the Estate of Brenda Lopez; EMELLY COLON-SANTOS; EDRIS M. SANTOS, as Personal Representative of the Estate of Pantaleon Santos; FLAVIO JANUARIO,

Defendants.

---

No. 21-1636

MOTORISTS COMMERCIAL MUTUAL INSURANCE COMPANY,

Plaintiff, Appellee,

v.

RUBEN D. ESPAILLAT, as Personal Representative of the Estate of Ruben Dario Espaillat; TAMMY L. BERIO, as Personal Representative of the Estate of Elliott Rowlands, Jr.; GIOVANNI SANTIAGO; KENNETH VINCENT; MAUREEN VINCENT; STEVEN SARKIS; SANDRA ORTIZ, as Personal Representative of the Estate of Leezandra Aponte; FLAVIO JANUARIO,

Defendants, Appellants,

ROGER HARTWELL; LYNNWAY AUTO AUCTION, INC.; SAFETY INSURANCE
COMPANY; BRESMIL ROBLES; FANNY RAMIREZ; SHIRLEY MEZA LOPEZ, as
Personal Representative of the Estate of Brenda Lopez; EMELLY
COLON-SANTOS; EDRIS M. SANTOS, as Personal Representative of the
Estate of Pantaleon Santos; MARK LEE,

Defendants.

————————————

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Denise J. Casper, U.S. District Judge]

————————————

Before

Kayatta, Thompson, and Gelpí, Circuit Judges.

————————————

Louis J. Muggeo, with whom Jared J. Muggeo and Muggeo &
Associates were on brief, for appellants Roger Hartwell and Lynnway
Auto Auction, Inc.
J. Michael Conley, with whom Kenney & Conley, P.C. was on
brief, for appellants Ruben D. Espaillat, Tammy L. Berio, Giovanni
Santiago, Kenneth Vincent, Maureen Vincent, Steven Sarkis, Sandra
Ortiz, and Flavio Januario.
Patrick F. Hofer, with whom Jared K. Clapper, Clyde & Co US
LLP, Ben N. Dunlap, and Freeman Mathis & Gary, LLP were on brief,
for appellee.

————————————

November 23, 2022

————————————

**KAYATTA**, **Circuit Judge**. This insurance-coverage dispute arises from an auction at which a motor vehicle being displayed for bidding suddenly accelerated into a group of attendees, killing five and injuring many others. Motorists Commercial Mutual Insurance Company ("Motorists"), which insured the dealership that owned the vehicle, brought this action seeking a declaration that its policies do not cover the auctioneer or its employee who was behind the wheel of the vehicle when it struck the victims. Defendants in this action include those who claim an interest in Motorists' coverage: the victims, the auctioneer, and its employee. Both sides moved for summary judgment, which the district court granted in favor of Motorists. Motorists Com. Mut. Ins. Co. v. Hartwell, 549 F. Supp. 3d 220, 231 (D. Mass. 2021). After a fresh look at defendants' arguments spanning several policies and provisions, we agree with the district court that Motorists' policies do not cover this accident. Our reasoning follows.

## I.

### A.

We draw the following facts primarily from the parties' statements of material facts, the responses to each, and the Motorists policies at issue.

Nashua Automotive, LLC is a New Hampshire car dealership that sells new and used cars. It is owned by a dealership group

called AutoFair, Inc. and operates under the name "AutoFair Volkswagen of Nashua." We will refer to Nashua Automotive, LLC as "Nashua."

While AutoFair dealerships, like Nashua, sell most of their vehicles "retail" (to the public), about 8% or 9% of their revenues come from vehicles sold "wholesale" (online or at an auction). For its vehicles sold wholesale, Nashua primarily engages with a company called Lynnway Auto Auction, Inc., which operates an auction facility in Billerica, Massachusetts. Neither AutoFair nor Nashua owns Lynnway, and Lynnway does not own Nashua or AutoFair.

In April 2017, Nashua received a 2006 Jeep Grand Cherokee as a trade-in for a new vehicle it sold. Nashua arranged for Lynnway to auction the Jeep. On May 3, 2017, while that Jeep was being put up for auction inside Lynnway's Billerica facility, it accelerated into a crowd, causing multiple serious injuries and five deaths. At the time of the accident, Lynnway employee Roger Hartwell was seated in the driver's seat of the Jeep, though he claims that the vehicle accelerated uncontrollably despite his efforts to stop it. Hartwell was subject to a long series of suspensions of his driver's license, although the parties dispute whether Hartwell's license was suspended at the time of the accident.

In due course, the victims and their estates filed a series of lawsuits in Massachusetts state court, alleging several theories of liability against Lynnway, Hartwell, Nashua and AutoFair, as well as other related individuals and entities.

**B.**

Of the various insurance companies whose policies may be implicated by those underlying claims, this case concerns only one: Motorists Commercial Mutual Insurance Company. Motorists provided a liability policy (the "Primary Policy") that covered AutoFair, Nashua, and other AutoFair-affiliated dealerships as named insureds, but did not name Lynnway or Hartwell among the insureds. Motorists also provided a so-called "Commercial Umbrella" policy (the "Umbrella Policy"), which provided supplemental insurance above the Primary Policy's limits to many of the same named insureds, including Nashua and AutoFair.

The Primary Policy includes a "Garage Coverage Form" that provides that Motorists "will pay all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from 'garage operations' involving the ownership, maintenance or use of covered 'autos.'" This form was modified by a New Hampshire Changes in Policy endorsement (the "New Hampshire Endorsement"). We train our attention on two provisions giving rise to the parties' dispute. First, the New Hampshire Endorsement

- 5 -

changed the definition of "Who Is An Insured" such that it includes "[a]nyone else while using with your permission a covered 'auto' you own . . . except . . . [s]omeone using a covered 'auto' while he or she is working in a business of selling, servicing or repairing 'autos' unless that business is yours."  Following the parties' lead, we refer to this provision as the "auto business exclusion."[1]  Second, the New Hampshire Endorsement added an exclusion that provides that the insurance does not apply to "[a]ny 'insured' for 'bodily injury' or 'property damage' arising out of the operation of any vehicle by that 'insured' and while that 'insured's' driver's license is under suspension or revocation." We call this the "suspended license exclusion."

The Umbrella Policy, in turn, provides further coverage for bodily injuries, but contains an "Automobile Liability -- Following Form" endorsement, which provides:

> Except as coverage is available to you in the underlying policies as set forth in the Schedule of Underlying Insurance, this policy does not apply to the ownership, maintenance, operation, [or] use . . . of any automobile while away from premises owned by, rented to, or controlled by you.[2]

---

[1]  Though styled as such by the parties and other courts, the auto business exclusion appears in the policy here not as an exclusion but as part of the definition of who is an insured.  We adopt the parties' use of the "exclusion" phrasing only for ease of discussion.

[2]  The Primary Policy is included in the Schedule of Underlying Insurance for the Umbrella Policy.

Finally, as relevant here, the Umbrella Policy also defines "who is an insured" for that policy, which specifically excludes "[a]ny person employed by or engaged in the duties of an auto sales agency . . . that you do not operate."

## C.

Motorists initiated this federal action in the District of Massachusetts on the basis of diversity jurisdiction, seeking a declaratory judgment that its policies do not provide coverage for the victims' claims against Lynnway and its employee. Defendants include Lynnway and Hartwell (the "Lynnway defendants") and the accident victims who brought the state-court suits (the "victim defendants"). All defendants moved for summary judgment below, prompting a cross-motion from Motorists. Motorists pointed to both the auto business exclusion and the suspended license exclusion described above, each of which Motorists contended foreclosed coverage under the Primary Policy. It also argued that its Umbrella Policy's Following Form Endorsement provides auto coverage that is no broader than that provided for in the Primary Policy.

The district court agreed with Motorists on all three scores, granting summary judgment in its favor. Motorists, 549 F. Supp. 3d at 229-31. Defendants took timely appeals that we consolidated for briefing and argument.

We review de novo the district court's grant of summary judgment. AJC Int'l, Inc. v. Triple-S Propiedad, 790 F.3d 1, 3 (1st Cir. 2015). A district court awards summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). For a factual dispute to be "genuine," there must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). "[O]n an appeal from cross-motions for summary judgment, the standard does not change; we view each motion separately and draw all reasonable inferences in favor of the respective non-moving party." Pac. Indem. Co. v. Deming, 828 F.3d 19, 23 (1st Cir. 2016) (quoting Roman Cath. Bishop of Springfield v. City of Springfield, 724 F.3d 78, 89 (1st Cir. 2013)).

The parties agree that New Hampshire substantive law governs the insurance contracts because the policies were issued to New Hampshire insureds. We therefore look to that state's law for the insurance-law principles that will guide our review. See Merch. Ins. Co. of N.H. v. U.S. Fid. & Guar. Co., 143 F.3d 5, 8 (1st Cir. 1998) (forgoing independent choice-of-law analysis where the parties agreed Massachusetts law applied and there was "at least a 'reasonable relation' between the dispute and the forum

- 8 -

whose law has been selected by the parties" (quoting Bird v. Centennial Ins. Co., 11 F.3d 228, 231 n.5 (1st Cir. 1993))).

Among those principles is the familiar instruction that "[i]nterpretation of an insurance policy is a question of law." Todd v. Vt. Mut. Ins. Co., 137 A.3d 1115, 1120 (N.H. 2016). We examine "the plain and ordinary meaning of the words in context" to construe the policy's terms "as would a reasonable person in the position of the insured based on more than a casual reading of the policy as a whole." Id. (quoting Great Am. Dining, Inc. v. Phila. Indem. Ins. Co., 62 A.3d 843, 846 (N.H. 2013)). Our inquiry must be objective, so where the policy is "clear and unambiguous," we will "accord the language its natural and ordinary meaning." Newell v. Markel Corp., 145 A.3d 127, 130 (N.H. 2016) (quoting Colony Ins. Co. v. Dover Indoor Climbing Gym, 974 A.2d 399, 401 (N.H. 2009)). But, "[i]f more than one reasonable interpretation is possible, and an interpretation provides coverage, the policy contains an ambiguity and will be construed against the insurer." Brickley v. Progressive N. Ins. Co., 7 A.3d 1215, 1217 (N.H. 2010) (quoting Cath. Med. Ctr. v. Exec. Risk Indem., 867 A.2d 453, 456 (N.H. 2005)).

**III.**

On appeal, both the Lynnway defendants and the victim defendants contend that the coverage provided by the broad insuring clause of the Primary Policy survives that policy's auto business

exclusion as well as its suspended license exclusion.  They also insist that the Umbrella Policy separately provides coverage.

## A.

We consider first the Primary Policy.  The parties agree that Lynnway and Hartwell are covered under the Primary Policy unless one of the two exclusions relied upon by Motorists applies.  Like the parties, we train our attention first on the auto business exclusion.  As modified by the New Hampshire Endorsement, that exclusion excepts from the definition of insureds "[s]omeone using a covered 'auto' while he or she is working in a business of selling, servicing or repairing 'autos' unless that business is yours."  The "yours" in this language refers to a named insured -- in this case, Nashua.  Defendants argue, first, that Lynnway was not "in a business of selling, servicing, or repairing autos."  Second, they argue that even if Lynnway was in such a business, that business was Nashua's.  We address these arguments in turn.

## 1.

Defendants' contention that Lynnway and its employee were not in the business of selling autos warrants only a brief discussion, as they were plainly engaged in that business.  Lynnway's Articles of Incorporation describe it as "a general automobile auction business" whose purpose is "to auction, sell and distribute automobiles" and "[t]o engage in the business of purchasing, . . . [and] selling . . . all types of new and used

- 10 -

automobiles."  The Lynnway defendants principally argue that an auctioneer who never takes title to the goods sold acts merely as a broker, rather than the seller (or offeror) of the goods.  But under the plain language of the policy, we focus not on whether Lynnway took title to the auto.  We focus instead on whether Hartwell and Lynnway were working in a business of selling autos.

Under New Hampshire law, we are bound to consider "the plain and ordinary meaning" of the exclusion language "as would a reasonable person in the position of the insured."  Todd, 137 A.3d at 1120 (quoting Great Am. Dining, 62 A.3d at 846).  A reasonable person understands that an auction is a sale, and thus that someone engaged in an auction business is engaged in a selling business.  See Auction, Black's Law Dictionary (11th ed. 2019) (defining "auction" as "[a] public sale of property to the highest bidder; a sale by consecutive bidding, intended to reach the highest price of the article through competition for it"); Auction, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/auction (last visited Nov. 22, 2022) (defining "auction" as "a sale of property to the highest bidder").  Indeed, the Lynnway defendants' own brief elsewhere appears to adopt this commonsense understanding, referring to Lynnway's business as "engaged in the activity of selling cars for AutoFair at the time of the accident."  In the absence of any authority holding that only someone with title to goods can be engaged in a business of

selling those goods, we decline to adopt defendants' strained reading of the unambiguous policy language.[3] See Russell v. NGM Ins. Co., 176 A.3d 196, 200 (N.H. 2017) ("For an ambiguity to exist, the disagreement must be reasonable. . . . [T]his court will not perform amazing feats of linguistic gymnastics to find a purported ambiguity simply to construe the policy against the insurer and create coverage where it is clear that none was intended." (quoting Bartlett v. Com. Ins. Co., 114 A.3d 724, 733 (N.H. 2015))).[4]

**2.**

As an alternative, defendants contend that any selling business in which Lynnway and Hartwell were engaged at the time of the accident was Nashua's business. This contention fares no better than the first. As just established, Lynnway and Hartwell

_____

[3] The Lynnway defendants invoke several Massachusetts statutes defining "dealer," "owner," and "seller" to support their argument that they were not in the business of selling autos. See Mass. Gen. Laws ch. 90, § 1; id. ch. 106, § 2-103(1)(a), (d). But these statutes largely bear on irrelevant questions, such as whether Lynnway was an auto "dealer," or what obligations Nashua had as the owner of the auto being sold. At best, these statutes clarify who is "the seller" of an auto in a given transaction. None shed light on the separate inquiry of why the "business of selling autos" under New Hampshire law must be construed to encompass only the title-holding seller and to exclude auctioneers.

[4] Because we find that Lynnway and Hartwell were working in a business of selling autos, we need not consider Motorists' alternative argument that they were working in a business of "servicing" autos, on account of Lynnway's washing and refueling the cars it auctioned.

were at that time engaged in a particular method of selling: They were auctioning the Jeep. And it is undisputed that Nashua was not itself an auction house -- it engaged with other entities, like Lynnway, for this purpose. So while Nashua can fairly be said to have retained Lynnway to sell its vehicle, we see nothing in that relationship to suggest that Lynnway's independent auction business had been converted into an arm of Nashua's business. Cf. Carney v. Erie Ins. Co., 434 S.E.2d 374, 377, 379 (W. Va. 1993) (holding that the "unless the business is yours" exception in a nearly identical auto business exclusion did not apply because the policyholder "did not own the automobile business" that she was working for when the accident occurred).

Defendants resist this conclusion, arguing that we should read "business" to mean the "activity" of selling the car. So construed, one might then say, as defendants do, that Lynnway and Hartwell were engaged in Nashua's "business" because they "were using Nashua's vehicle in support of Nashua's efforts to sell its vehicle." At the least, defendants maintain that it is ambiguous whether the exclusion refers to a business entity or a business activity, and thus that the ambiguity should be construed against the insurer.[5]

---

[5] Defendants also urge us to consider the import of Nautilus Insurance Co. v. Ferreira, No. 1:20-cv-1053-JL, 2021 WL 3677713 (D.N.H. Aug. 19, 2021), for the question whether Lynnway was working in Nashua's business. But that case examined materially

We are unpersuaded. In reading language in an insurance policy, we consider the context, see Great Am. Dining, 62 A.3d at 846 ("We look to the plain and ordinary meaning of the policy's words in context."), the reasonable expectations of the insured, see Contoocook Valley Sch. Dist. v. Graphic Arts Mut. Ins. Co., 788 A.2d 259, 261 (N.H. 2001), and the purpose of the language in question, Tech-Built 153, Inc. v. Va. Sur. Co., 898 A.2d 1007, 1009 (N.H. 2006) ("The fundamental goal of interpreting an insurance policy, as in all contracts, is to carry out the intent of the contracting parties. To discern the parties' intent, we first examine the language of the contract itself." (citations omitted)).

Here, the language at issue plainly aims at making sure that coverage does not extend in general to persons or entities working in any business of selling autos, while at the same time carving out an exception. The issue posed here is the reach of that exception. Clearly it preserves coverage for Nashua and its employees. Construing the "business" that is "yours" to mean Nashua's business enterprise -- i.e., its dealership that sells

---

different policy language that excluded coverage for certain workers "[d]irectly or indirectly performing duties related to the conduct of any insured's business." Id. at *3, *6. Plainly, whether someone's work duties are "[d]irectly or indirectly . . . related to the conduct of any insured's business" is a substantially broader inquiry than whether that person is working in the insured's business.

autos -- fully accomplishes this aim. Defendants, though, urge a broader reading of business to mean "business activity," which they construe to mean the activity of auctioning the Jeep. They then assume that that activity is a part of Nashua's activity of selling the Jeep.

We see no reason to adopt such a broad reading. No reasonable insured that procured the policy would ordinarily have any interest in paying for a policy that provided coverage for another person who works for another unrelated seller of autos. Presumably, this is likely why neither Nashua -- which obtained the policy -- nor the insurer voices any support for construing the policy as deeming Hartwell or Lynnway to be an insured. Rather, the auto business that assumes control of the vehicle should turn to its own insurer to cover any losses. See Borden v. Progressive Direct Ins. Co., 30 N.E.3d 856, 858 (Mass. App. Ct. 2015). And that is the precise situation here: Lynnway retained its own insurance policies, the providers of which have conceded the availability of coverage. It also strikes us as contrived to say that Hartwell was working in Nashua's business. Certainly, if asked at the time of the accident to name which business he worked in, he would not have said Nashua's.

The fact that Hartwell was employed by and subject to the control of Lynnway reinforces our conclusion that he was not working in Nashua's business. Courts across the country recognize

that the exclusion at issue here is "based on the assumption that the lack of control over the insured vehicle increases the risk to the owner's insurer." Borden, 30 N.E.3d at 857-58 (citing Haley v. State Farm Mut. Auto. Ins. Co., 202 S.E.2d 838, 840 (Ga. Ct. App. 1973)); see also Grisham v. Allstate Ins. Co., 992 P.2d 891, 893 (N.M. Ct. App. 1999) ("Lack of control increases risk to the owner's insurer, a risk that is neither included in the policy nor calculated in the premium charged to the owner."); Carney, 434 S.E.2d at 378 (W. Va. 1993) (discussing same explanation supplied by 7 Am. Jur. 2d Automobile Insurance § 90 (1990)). If we were to conclude that the relevant business was a unitary "activity" of selling Nashua's cars, and that that "business" was Nashua's, then the auto business exclusion would appear to be inapplicable in most of the circumstances for when its purpose would seem to make it applicable, at least when included in a garage coverage policy for auto dealers. One who uses with permission an insured dealer's vehicle in a "selling, servicing[,] or repairing" business would seemingly always be able to argue that their use also necessarily supported Nashua's business activity of selling autos. We specifically asked counsel for each set of defendants at oral argument to identify some situation in which, under their reading of this policy's auto business exclusion and its exception, it would actually exclude coverage. Neither could do so.

The Lynnway defendants respond that AutoFair or Nashua exerted some de facto control over the Jeep while it was being auctioned by Lynnway, due to certain features of the businesses' extensive commercial relationship, including that AutoFair had use of an office at Lynnway's premises and could make certain decisions about how its cars were sold. But nothing in the policy suggests that this type of control is equivalent to making the auction business Nashua's or AutoFair's business. On all occasions when a dealership permits another business to sell, service, or repair one of its vehicles, the dealer presumably always retains some control over the transaction. Exerting some influence over a business's operations through mutually beneficial commercial arrangements does not make that business "yours." Hence, we are still left with the conclusion that defendants' reading is wrong.[6]

To be sure, defendants dispute the precise degree of "control" Nashua relinquished or retained over the disposition of the vehicle at auction, and by extension dispute whether the exclusion's normative underpinnings apply here. But this misses the forest for the trees. Regardless of whether Nashua had some input on whether and how its vehicle would be sold, defendants do not contest that Nashua surrendered the Jeep's keys to Lynnway so

---

[6] We hasten to add that nothing in this opinion bears on the entirely different question of whether the actions of the named insured Nashua render it liable to any defendants.

- 17 -

that Lynnway's employee could drive the vehicle for its independent business of selling autos by auction.[7] A reasonable entity in either party's position would not expect its own garage policy to cover another auto-selling business.

Defendants marshal the same set of business-relationship facts in support of an argument concerning Nashua's "garage operations." The Primary Policy defines "garage operations" to include "all operations necessary or incidental to a garage business." Defendants argue that Lynnway's auction was "necessary and incidental" to Nashua's ability to sell its cars and thus part of its garage operations. This argument may have had some relevance were we considering the language of the exclusion before the New Hampshire Endorsement, as the original exclusion's exception read "unless that business is your 'garage operations.'" But seeing as that language has been modified by the endorsement to eliminate the reference to garage operations, and that defendants concede the endorsement applies, whether Lynnway's

---

[7] For the same reason, defendants' invocation of a Massachusetts statutory presumption that a vehicle's owner is legally responsible, in the event of an accident, for the conduct of the vehicle's driver, see Mass. Gen. Laws ch. 231, §§ 85A-B -- a presumption that can be rebutted by evidence to the contrary, see Cheek v. Econo-Car Rental Sys. of Bos., Inc., 473 N.E.2d 659, 660-61 (Mass. 1985) -- also misses the mark even assuming New Hampshire law also recognized such a presumption.

auction was part of Nashua's "garage operations" simply has no bearing on the case now before us.[8]

Finally, the Lynnway defendants assert that our reading would create surplusage in the policy, specifically by reading out the different coverage treatment that the Primary Policy provides for "employees" and "anyone else" using a covered auto. Not so. "Employees" are simply a subset of "anyone else," a category that includes everyone other than "[y]ou, your executives and . . . members (if you are a limited liability company)." While employees are subject to certain special provisions under the policy, Nashua employees driving Nashua vehicles are covered under the general provision that grants coverage to "[a]nyone else while using with your permission a covered 'auto' you own" -- and such employees are not subject to the auto business exclusion because the business they are working in is Nashua's.

In sum, we find that the Primary Policy's auto business exclusion defines the policy's insureds so as to exclude Lynnway and Hartwell from coverage for the underlying claims here. We therefore need not take up the parties' alternative arguments concerning the Primary Policy's suspended license exclusion.

---

[8] For the same reason, we need not discuss defendants' argument that we ought reach the same outcome as <u>Blue Ridge Auto Auction</u> v. <u>Acceptance Indemnity Insurance Co.</u>, which considered a version of the exclusion that retained the "unless that business is your 'garage operations'" formulation. 807 S.E.2d 51, 54 (Ga. Ct. App. 2017).

**B.**

Defendants next contend that the Umbrella Policy provides coverage for the underlying claims. This policy separately defines the insureds for its own purposes and excludes from that definition those employed by an "auto sales agency." Both groups of appellants argue this is an ambiguous term and so should be construed narrowly to exclude only auto dealerships, which would presumptively leave Lynnway within the definition of insureds. Motorists points out that this particular argument was raised to but not addressed by the district court below. Rather, the district court agreed with Motorists' contention that the Umbrella Policy provides no coverage for the underlying claims because it is limited by its Following Form Endorsement, which provides that the Umbrella Policy "does not apply" to auto coverage "[e]xcept as coverage is available to you in the underlying policies." See Motorists, 549 F. Supp. 3d at 230-31. Neither set of appellants discusses, much less contests, Motorists' contention or the grounds on which the district court decided the issue below. In the absence of any preserved challenge, we have no reason not to assume that the district court was correct that the Umbrella Policy applies only to the extent auto coverage is provided in the Primary Policy. Id. at 230. Certainly the caselaw seems to provide comfort in making this assumption. See Jalbert ex rel. F2 Liquidating Tr. v. Zurich Servs. Corp., 953 F.3d 143, 148 (1st

Cir. 2020) (applying Massachusetts law in finding that the disputed policy was "a 'follow-form' policy . . . , meaning that coverage is subject to the terms and conditions of the primary policy"); Insituform Techs., Inc. v. Am. Home Assurance Co., 566 F.3d 274, 278 (1st Cir. 2009) ("The phrase 'follow form' refers to the practice, common in excess policies, of having the second-layer coverage follow substantively the primary layer provided by the main insurer." (citing 2 Ostrager & Newman, Handbook on Insurance Coverage Disputes § 13.01 (11th ed. 2002))). Given that the underlying Primary Policy does not cover the claimed liabilities, we need linger no longer on the Umbrella Policy.

**IV.**

For the foregoing reasons, the judgment of the district court is affirmed.