# United States Court of Appeals
## For the First Circuit

No. 22-1296

PHILADELPHIA INDEMNITY INSURANCE COMPANY,

Plaintiff, Appellee,

v.

BAS HOLDING CORPORATION,

Defendant, Appellant,

BROCKTON AGRICULTURAL SOCIETY,

Defendant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF Massachusetts

[Hon. William G. Young, U.S. District Judge]

Before

Barron, Chief Judge,
Lipez and Howard, Circuit Judges.

Christopher M. Reilly, with whom Sloane & Walsh, LLP was on brief, for appellant BAS Holding Corporation.

Alexander G. Henlin, with whom Kevin C. Cain, David W. Zizik, and Sulloway & Hollis, P.L.L.C were on brief, for appellee Philadelphia Indemnity Insurance Company.

August 17, 2023

**LIPEZ**, <u>**Circuit Judge**</u>.  In March 2021, an arsonist destroyed a building on the Brockton Fair fairgrounds known as the "State Building," owned by BAS Holding Corporation ("BAS") and, according to BAS, insured against loss by Philadelphia Indemnity Insurance Company ("Philadelphia").  Questioning whether the policy did in fact cover the State Building and, even if it did, whether the coverage would be limited because the building was vacant, Philadelphia undertook an investigation to determine coverage.  In so doing, the insurer sought an examination under oath ("EUO") of George Carney, the president and owner of BAS.  Claiming in part that BAS refused to provide Carney for an EUO in violation of its obligation under the insurance contract, Philadelphia denied all coverage for the State Building.

Philadelphia then filed this action seeking, inter alia, a declaration that BAS breached the insurance policy's EUO condition.  In its answer, BAS denied that it had refused to submit to an EUO.  On cross-motions for summary judgment, the district court granted judgment for Philadelphia on the ground that BAS failed to cooperate by not providing Carney for an EUO.  On the record before us, that finding is insupportable.  As described below, the evidence unequivocally shows that BAS never willfully and inexcusably refused to submit to an EUO.  We therefore vacate the summary judgment for Philadelphia and remand for further proceedings.

# I.

## A. Factual Background

BAS is the record owner of the State Building, a landmark building located on the Brockton Fair fairgrounds in Brockton, Massachusetts. Built during the Depression, the brick structure was a rough replica of the old Massachusetts State House in Boston, standing about five stories high and consisting of 12,292 square feet. The interior of the building was mostly open space used for exhibits or storage at the annual agricultural fair. The fire set by the arsonist on March 17, 2021, caused a total loss of the structure. The remains of the building were razed that same day. At no point has there been any allegation of wrongdoing or fraud on the part of BAS regarding the fire.

At the time of the fire, BAS held a policy (the "Policy") issued by Philadelphia that BAS claimed covered the State Building. BAS gave notice of the fire to Philadelphia mere hours after it broke out. Philadelphia investigated the loss, assigning a claims professional and an independent adjuster to the matter. As its investigation unfolded, Philadelphia became convinced that the State Building may not be insured under the Policy and wrote a "reservation of rights" letter to BAS. In that letter, Philadelphia cited terms in the Policy requiring the cooperation of BAS in investigating the loss and limiting coverage in the event that the State Building was vacant, if it was covered at all.

During the investigation, Philadelphia submitted multiple document requests to BAS. It is undisputed that BAS cooperated fully with these requests and responded with more than seven hundred documents.

On June 16, 2021, Philadelphia also sought an EUO of BAS in accordance with the Policy's EUO condition, which states as follows:

> We may examine any insured under oath, while not in the presence of any other insured and at such times as may be <u>reasonably required</u>, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

(emphasis added). The Policy also states in a separate provision that "[t]he insured, as often as may be reasonably required, shall . . . submit to examinations under oath." Philadelphia did not ask BAS to produce any specific person for the EUO. Instead, Philadelphia asked BAS to designate someone who could answer questions relating to eight enumerated topics.[1]

---

[1] Specifically, Philadelphia sought information on the following: (1) "[t]he use and operations of the buildings and property at the Brockton Fair fairgrounds;" (2) "[t]he structures or buildings listed on the 'Locations Schedule' of the Policy;" (3) "[t]he structures or buildings listed on the 'Locations Schedule' of any insurance policy issued by Philadelphia prior to June 27, 2020;" (4) "[t]he location, maintenance, use and operations of the buildings on or near the Brockton Fair fairgrounds which was reportedly damaged or destroyed by fire on or about March 17, 2021, which building may have been referred to as the 'State Building,' for the time period from January 1, 2016 to the present time;" (5) "[t]he location, maintenance, use and

- 4 -

On August 3, 2021, BAS presented Susan Rodrigues as its designee to attend the EUO. The president of BAS, Carney, testified in his deposition that "Sue [Rodrigues] . . . and Joe Cappucci, they handled all the insurance." Rodrigues was not employed directly by BAS, but she worked for the company in her role as Operations Coordinator for the Brockton Fair and also was employed by other companies owned by Carney, most of which had connections to the fairgrounds where the State Building was located. In these roles, she did "everything" to help put on the fair and also oversaw maintenance work on the fairgrounds and buildings throughout the year, including the State Building.

It is undisputed that Rodrigues tried to answer all questions put to her at the EUO, but the parties disagree about the adequacy of her answers. The record makes clear that she testified about the purpose of the State Building, how it was most recently used, how it was maintained, the nature of any security measures put in place to protect the building, the names of the maintenance workers who take care of the State Building, how the

---

operations of structures or buildings of any kind, size or nature on the Brockton Fair fairgrounds other than the 'State Building' since January 1, 2016;" (6) "[a]ny structures or buildings of any kind, size or nature which have been constructed on the Brockton Fair fairgrounds since January 1, 2010;" (7) "[a]ny structures or buildings of any kind, size or nature on the Brockton Fair fairgrounds which have been torn down or razed since January 1, 2010;" (8) "[a]ny structures or buildings or any kind, size or nature on the Brockton Fair fairgrounds which have been renovated since January 1, 2010."

rest of the fairgrounds is maintained, how other buildings on the fairgrounds are used, and other facts about the fairgrounds. When she did not know the answer to a question, she often agreed to research those queries and provide a response at a later date if the information was available.

During her examination, Rodrigues identified six people -- five maintenance workers and Carney -- who might be able to provide additional information in response to BAS's questions. Specifically, she identified Carney as someone who would be knowledgeable on two topics: (1) the sale of the State Building to the Brockton Agricultural Society in 1999, and (2) what the State Building was used for other than storage since it was built in 1931 up to the date of the fire.[2] Of these two topics, the first was not identified in Philadelphia's June 2021 request and the second was only partially covered by the fourth topic in that request.

On August 4, the day after Rodrigues appeared for her EUO, Philadelphia sent an email to BAS's counsel requesting EUOs of the six individuals she identified as potentially having additional relevant information. In that email, Philadelphia

_____

[2] Rodrigues provided some answers to this latter question. She told Philadelphia that the building had been used as a state fair attraction for people to see a replica of the Massachusetts State House, as an exhibition hall, and as a place of storage.

- 6 -

specifically asked for Carney to appear for an EUO on August 19, 2021.  BAS replied the same day, stating that it would respond further to Philadelphia's request to take additional EUOs in a separate correspondence.[3]  Philadelphia claims that this August 4 reply constituted BAS's first refusal to produce Carney for an EUO.

On August 9, as promised, BAS responded more fully to Philadelphia's request for additional EUOs.  Pointing to Policy language stating that Philadelphia could only take an EUO if it is "reasonably required," BAS wrote that Philadelphia's request

> for six additional examinations under oath is improper and is not permitted by the Policy or law, particularly where Philadelphia has still not identified a factual basis upon which it has reserved its rights, and the information produced to date establishes that coverage is owed under the Policy for the loss. Notwithstanding this, if Philadelphia identifies the factual basis for its reservation of rights and provides a proper explanation for why a further examination under oath is "reasonably required" [pursuant to the policy language], BAS will consider such request and respond further.

According to Philadelphia, this email constituted a second refusal of BAS to produce Carney for an EUO.

---

[3] Oddly, this email promising a further response is not in the record.  But the content of the email is included in BAS's brief, and Philadelphia's counsel did not dispute BAS's version of the email at oral argument.  The email from BAS stated: "I will respond to Philadelphia's document requests and its request to take examinations under oath of persons who are not insureds in separate correspondence."

On August 10, Philadelphia responded by stating that it had no obligation to provide BAS with the basis for its reservation of rights or explain why a further EUO was "reasonably necessary." Nevertheless, Philadelphia's email proffered an explanation for why it believed such further EUOs were required. As part of that explanation, Philadelphia stated that it is permitted to take an EUO of Carney because he owns and manages BAS. In this same email, Philadelphia requested that BAS "confirm" that Carney would appear for an EUO scheduled for August 19, asking BAS to contact Philadelphia if that date would not work "to arrange for a new date, time and place within the next two weeks." The email also included other questions and document requests to which Philadelphia gave BAS fourteen days to respond.

On August 13, less than 72 hours after sending the August 10 email, and before BAS had sent any response, Philadelphia sent an email denying BAS's insurance claim for, inter alia, "refusing Philadelphia's requests for Examinations Under Oath." The email stated, in relevant part: "BAS's refusal to participate in the EUOs [that counsel] requested on August 4, 2021 constitutes a material breach of the Insured's obligations under the policy, and reflects its continuing failure to cooperate in Philadelphia's investigation or settlement of the claim."

B. **Procedural History**

Philadelphia filed its complaint in September 2021,

- 8 -

seeking declarations that the State Building was not covered under the Policy (Count I), the loss to the State Building was barred by the Policy's "Vacancy" Exclusion (Count II), and BAS breached the Policy's EUO condition (Count III).[4]

In its responsive pleading, BAS asserted multiple counterclaims. First, it sought a declaration that the Policy covered its claim and that Philadelphia improperly denied coverage (Count I). BAS also asserted that Philadelphia breached its contract (i.e., the Policy) by improperly denying the claim (Count II); violated Massachusetts' unfair business practices statute, Chapter 93A, Mass. Gen. Laws ch. 93A, § 11 (Count III); and breached the implied covenant of good faith and fair dealing (Count IV). The parties subsequently filed cross-motions for summary judgment.

In March 2022, the district court heard oral argument on these motions. At the outset of the brief hearing, the court stated that its primary concern was the "noncooperation of [BAS's] President," Carney, in not submitting to an EUO. The parties then debated whether BAS had refused to produce Carney for an EUO. Philadelphia noted its request to take additional EUOs of Carney and the five maintenance workers named by Rodrigues at her EUO. It argued that BAS "categorically refused" to produce those

---

[4] The complaint also sought injunctive relief that is irrelevant to this appeal.

individuals for EUOs.  Philadelphia then stated that the attendance of Carney and the maintenance workers at the requested EUOs "was a condition precedent" to coverage and BAS's refusal to produce them prevented Philadelphia from completing its investigation. BAS responded that the insurance policy did not require BAS to submit to Philadelphia's specific selection of who should appear on BAS's behalf at the EUO, that it complied with Philadelphia's request for an EUO by producing Rodrigues, and that it never missed an EUO.  BAS further argued that it never refused to produce Carney for an EUO; instead, it merely asked Philadelphia to clarify why further EUOs of Carney and the five maintenance workers were required.

The court then made clear once again that it was not concerned about the five maintenance workers, telling the parties "it's Carney that troubles me."  It then granted Philadelphia's motion for summary judgment in a bench ruling:

> As I understand the[] [caselaw cited by Philadelphia], [attending EUOs] is a condition precedent.  I recognize this is a harsh result.  We'll see if Philadelphia Indemnity can hang on to it.
>
> Summary judgment for the plaintiff . . . on a declaration that they are not required to cover this claim because of the lack of cooperation of Carney.  Carney is the President.  I'm not so troubled by the rest of it.  But as I read these cases, they require this result.  If a gentler result is sought under the law . . . it's not here.

- 10 -

We review a district court's grant of summary judgment de novo.  Ferrari v. Vitamin Shoppe Indus., 70 F.4th 64, 69 (1st Cir. 2023).  In conducting this review, we assess the facts in the light most flattering to the nonmovant and draw all reasonable inferences on its behalf.  Motorists Com. Mut. Ins. Co. v. Hartwell, 53 F.4th 730, 734 (1st Cir. 2022).  A party is entitled to summary judgment only when the record reveals no genuine issue as to any material fact and it is clear that judgment is proper as a matter of law.  Id.  The standard of review remains the same where, as in this case, the parties have filed cross-motions for summary judgment because we view each motion separately.  Id.

On appeal, BAS not only challenges the district court's ruling in favor of Philadelphia, but it also urges us to hold as a matter of law that it is entitled to the insurance coverage it seeks for the loss of the State Building.  To reach such a conclusion, however, we would need to consider other justifications asserted by Philadelphia for disclaiming coverage that the district court did not address in its ruling -- including, for example, the Policy's limitation for vacant buildings.  We decline to go beyond the district court's stated rationale for its decision -- "the lack of cooperation of Carney" for a required EUO -- and leave any remaining issues for the district court to resolve

on remand.[5]

Under Massachusetts law, attendance at reasonably requested EUOs is a condition precedent for insurance coverage. See Mello v. Hingham Mut. Fire Ins. Co., 656 N.E.2d 1247, 1250 (Mass. 1995). An insurer thus may properly disclaim coverage when faced with a "wilful [sic], unexcused refusal to submit to an examination under oath, without proof of actual prejudice." Lorenzo-Martinez v. Safety Ins. Co., 790 N.E.2d 692, 695-96 (Mass. App. Ct. 2003).

Thus, the question before us is a narrow one: applying de novo review and drawing all reasonable inferences in favor of BAS, did the district court rule correctly -- as a matter of law -- that BAS willfully and without excuse refused Philadelphia's request for an EUO of Carney, thereby breaching the insurance contract?

Philadelphia contends that BAS's emails on August 4 and August 9, 2021 amount to a "contumacious refusal by BAS to produce George Carney for an examination under oath." As further evidence

---

[5] There is some suggestion in the district court's oral ruling that, in addition to its specific focus on Carney's failure to appear for an EUO, the court may have had in mind Massachusetts caselaw establishing more generally that an insured's failure to cooperate can justify disclaiming coverage upon a showing of prejudice to the insurer's investigation. See, e.g., Darcy v. Hartford Ins. Co., 554 N.E.2d 28, 32-33 (Mass. 1990). Neither party focuses on the prejudice-based theory on appeal, however, and we therefore confine our analysis to the circumstances surrounding Carney's non-appearance for an EUO.

that BAS refused to produce Carney for an EUO, Philadelphia avers that BAS presented Rodrigues to sit for an EUO even though "she was in fact unable to testify about any of the topics of examination specified by [Philadelphia]." BAS counters that there is no way to read the August 4 and August 9 emails as refusals, that the timing of Philadelphia's denial of BAS's claim precludes a finding of a refusal to submit to an EUO, and that Rodrigues was knowledgeable about the topics of Philadelphia's investigation.

In the August 4 email, Philadelphia asked to take EUOs of six individuals, including Carney. Philadelphia made this request the day after its EUO of BAS's designee, Rodrigues. BAS's email response simply read: "I will respond to Philadelphia's document requests and its request to take examinations under oath of persons who are not insureds in separate correspondence." There is no way to read this email as a willful refusal. Rather, it is a promise to respond more fully to the EUO request in a separate email.[6]

---

[6] In a single sentence of its brief, Philadelphia asserts that BAS's counsel admitted that he refused the request to produce Carney for an EUO. As evidence for this claim, Philadelphia points to a deposition being carried out by BAS's attorney in which the attorney clarifies a question for a witness. Setting aside the oddity of Philadelphia attempting to use the statement of a deposing attorney against that attorney's client, a review of the deposition at issue shows that BAS's counsel admitted no such thing. Rather, BAS's attorney admits to objecting to the request for an EUO of Carney and then goes on to explain that BAS would decide whether to attend additional EUOs once Philadelphia explained the basis for them.

The promised response was sent by BAS on August 9. In that email, BAS indeed objected to Philadelphia's request for the additional examinations because it did not believe the Policy language allowed for them. Nevertheless, BAS stated that it would "consider such [EUO] request[s] and respond further" if Philadelphia would identify "why a further examination under oath is 'reasonably required'" pursuant to the Policy's language. Once again, this email cannot be read as a willful and unexcused refusal. Rather than foreclosing all possibility of future EUOs, it instead asks why such EUOs are needed given that BAS had already produced Rodrigues for an EUO. As support for its position, BAS's email points to Policy language stating that only EUOs that are "reasonably required" may be taken. Thus, BAS took the position that even though it thought it had already satisfied the EUO requirement of the Policy, it would nevertheless consider additional EUOs once more information was provided. This position is not an unexcused and willful refusal to present Carney for an EUO.

Also, the timeline of Philadelphia's denial weighs heavily against any conclusion that BAS refused to produce Carney for an EUO. On August 3, Rodrigues appeared for an EUO on behalf of BAS. On August 4, Philadelphia asked for EUOs of Carney and the maintenance workers. On August 4 and August 9, BAS sent emails that, read together, requested further information before

- 14 -

submitting to additional EUOs.  On August 10, Philadelphia wrote to BAS asking for "confirm[ation] that Mr. Carney will appear next Thursday, August 19th, for an EUO as previously requested, or [make] contact . . . to arrange for a new date, time and place within the next two weeks" and to "confirm that BAS will make the other individuals available for their EUO's [sic] on Friday, August 20, 2021," or on various dates thereafter.  This email from Philadelphia provided some explanation as to why the interview of Carney was reasonably required.[7]  Thus, Philadelphia appears to accede in part to BAS's request for further information.  The email also appears not to treat BAS's August 4 and August 9 emails as refusals because it seeks confirmation that the EUOs on August 19 and August 20 will go forward.  Moreover, the email does not ask BAS to respond immediately but asks for a response regarding the EUO "within the next two weeks."  Less than 72 hours later, before BAS had responded, and six days before the earliest date Philadelphia had offered for the additional EUOs, Philadelphia

---

[7]  For example, Philadelphia explained that Carney was an individual identified by Rodrigues as someone who would be able to substantively respond to questions Rodrigues was unable to answer. Philadelphia also stated that Carney's "refusal to appear for an EUO is even more troublesome" because he "owns and manages BAS Holding Corp., the first Named Insured under the Policy."  Thus, according to Philadelphia, "Mr. Carney's refusal to appear for an EUO is tantamount to the Named Insured itself refusing to appear . . . ."

- 15 -

denied the claim in part[8] on the theory that BAS had refused to appear for the additional EUOs.

Philadelphia also argues that BAS's willful refusal to comply with its reasonable request for a meaningful EUO is reflected in BAS's decision to send Rodrigues to the only scheduled EUO because she lacked knowledge of the specified topics. As noted above, in making its initial request for an EUO, Philadelphia listed eight topics it wanted to investigate. BAS produced Rodrigues to try and answer those questions. The record reveals that she was not an unreasonable choice. She handled all of the insurance for BAS, and as the Operations Coordinator for the Brockton Fair -- where the State Building served as a replica of the old Massachusetts State House -- she had an intimate knowledge of the fairgrounds and buildings at issue. In that latter role she not only helped put on the annual agricultural festival but also oversaw the use and maintenance of the grounds and buildings throughout the year.

Moreover, Rodrigues's EUO testimony reveals that Philadelphia's assertion that "Ms. Rodrigues . . . was in fact unable to testify about any of the topics of examination specified by [Philadelphia]" is flatly wrong. She confirmed that she was one of two people who handled the insurance for BAS, she helped

---

[8] As noted supra, Philadelphia asserted other justifications for denying coverage that we do not consider in this appeal.

- 16 -

identify other buildings on the fairgrounds, explained the function of the State Building over the course of decades, described how the grounds and buildings were maintained and used throughout the year, admitted the lack of security for the State Building, testified that to her knowledge no part of the State Building had been "rebuilt" in recent years, and provided a variety of other information about the State Building, the fair, the history of the fairgrounds, and BAS. While it is clear that Rodrigues was not able to answer all of Philadelphia's questions, such as what precisely was stored in the State Building at the time of the fire, how the Statement of Values was calculated in the insurance policy, and whether there was running water in the State Building, she was not evasive, attempted to answer every question asked of her without objection, and stated that she would research the questions she could not answer and get back to Philadelphia.

Philadelphia also claims that Rodrigues stated that Carney would be knowledgeable about the eight topics listed in the initial EUO request and so it was reasonable to ask for his EUO. She never so testified. Rather, she simply said that Carney would be helpful on two topics, neither of which was specifically listed as one of the eight topics in the EUO request: (1) the sale of the State Building to the Brockton Agricultural Society in 1999, and (2) what the State Building was used for other than storage since

it was built in 1931 up to the date of the fire. Thus, the record supports BAS's asserted reasonable belief that providing Carney for an EUO was in no way necessary to advance Philadelphia's investigation of the fire.

In short, given the sequence and content of the emails at issue, as well as Rodrigues's responsive and non-evasive EUO testimony, it is impossible to find on this record that BAS willfully and without excuse refused to present Carney for an EUO. See Lorenzo-Martinez, 790 N.E.2d at 695-96 (holding that an insurer thus may properly disclaim coverage when faced with a "wilful [sic], unexcused refusal to submit to an examination under oath . . ..").  In other words, Carney's non-appearance at an EUO, especially since his first possible opportunity to appear on August 19 had not yet passed when Philadelphia notified BAS of its decision to deny coverage, in and of itself does not support the district court's grant of summary judgment as a matter of law in favor of Philadelphia.

Indeed, the district court's decision to the contrary is well outside the norm of relevant cases absolving insurance companies of coverage liability because of the conduct of an insured.  In Mello, a case emphasized by Philadelphia at the summary judgment hearing and relied upon by the district court, an insurer disclaimed coverage only after requesting multiple times over the course of months that the policyholder submit to an EUO

of the named insured, the policyholder stated that he would not attend any EUO on the ground that his participation was not required due to his Fifth Amendment rights, and he explicitly refused to attend a scheduled EUO. See Mello, 656 N.E.2d at 1248-52.

Similarly, in other typical cases, coverage was only disclaimed after multiple failed attempts to schedule an EUO, after an EUO was missed, or weeks after an unproductive EUO was completed. See, e.g., Hanover Ins. Co. v. Cape Cod Custom Home Theater, Inc., 891 N.E.2d 703, 704-08 (Mass. App. Ct. 2008) (holding that an insurer could deny coverage due to "intentional obstructionism in connection with the examination under oath" where an insured missed an EUO, walked out midway through another EUO, and refused to answer relevant questions at EUOs he attended); Miles v. Great N. Ins. Co., 634 F.3d 61, 64-7 (1st Cir. 2011) (allowing an insurance company's denial of a fire loss claim to stand in large part because the insureds did not answer questions at their EUOs); Ellis v. Safety Ins. Co., 672 N.E.2d 979, 981, 985 (Mass. App. Ct. 1996) (holding that an insurer was free from coverage obligations in large part because the insured failed to show up to multiple scheduled EUOs); David v. Hingham Mut. Fire Ins. Co., No. 07-10328, 2007 WL 4322792, at *3 (D. Mass. Dec. 7, 2007) (holding that the insurer could disclaim coverage in part because the insureds did not submit to the requested EUO).

BAS's conduct bears no resemblance to the behavior of the insureds in these cases. BAS attended the requested EUO, did not refuse to answer questions at the EUO, never missed an EUO, never delayed an EUO, and never refused to produce Carney for an EUO. Furthermore, instead of waiting weeks or months to deny coverage after requesting confirmation of an EUO of Carney, Philadelphia waited less than 72 hours and denied coverage before an EUO had ever been missed. The entire discussion between the parties about whether there should be additional EUOs of Carney and the five maintenance workers spanned only nine days. Philadelphia has not identified, nor are we aware, of any cases in Massachusetts where denial of coverage for failure to submit to an EUO resembled the fact pattern in this case.

## III.

For the reasons stated, we vacate the district court's grant of summary judgment for Philadelphia and remand for further proceedings not inconsistent with this opinion. Costs are awarded to BAS Holding Corporation.

So ordered.